# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

JANET L. BRIDGES,                          )
                                           )
                                           )
                   Plaintiff,              )
                                           )
v.                                         )          No.  05-CV-7-SAJ
                                           )
JO ANNE B. BARNHART,                       )
Commissioner of Social Security            )
Administration,                            )
                                           )
                   Defendant.              )

## OPINION AND ORDER[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Social Security benefits.[2]  Plaintiff asserts that the Commissioner erred because (1) the ALJ's decision failed to appropriately consider Plaintiff's obesity; and (2) the ALJ improperly discounted the opinion of the psychological examiner, Dr. Rawlings.  For the reasons discussed below, the Court **reverses and remands** the decision for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff testified at a hearing before the ALJ on June 17, 2003.  [R. at 24].  Plaintiff was born August 20, 1954, and was 48 years old at the time of the hearing before the ALJ. [R. at 28-29].  Plaintiff is 5'3" tall and weighs 180 pounds.  [R. at 29].  At the time of the

---

[1]   This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

[2]   Administrative Law Judge James D. Jordan (hereafter "ALJ") concluded that Plaintiff was not disabled by decision dated February 10, 2004.  [R. at 10 - 19].  Plaintiff appealed the decision by the ALJ to the Appeals Council.  The Appeals Council declined Plaintiff's request for review on November 6, 2004.  [R. at 5].

hearing, Plaintiff stated that she had lost 15 pounds over the previous seven weeks.  [R. at 30].

Plaintiff completed high school and approximately 15 hours at Rose State College. [R. at 30].  Plaintiff additionally completed nine hours at Central Vo-Tech school, and at the time of the hearing was studying medical coding and billing.  [R. at 30].

According to Plaintiff she became hurt when unpacking boxes and transferring books from box to box.  Plaintiff lost her balance and slipped and fell, twisting her back.  [R. at 38]. Plaintiff has not worked since December 7, 2001.  [R. at 38].

Plaintiff goes to school two nights each week.  [R. at 38].  Plaintiff noted that she has been taking only one class at a time because she has trouble absorbing information.  [R. at 39].  Plaintiff lives in a trailer house with her husband.  [R. at 40].

Plaintiff drives but has difficulty driving over 20 to 30 miles.  [R. at 39].  Plaintiff attends church three times each week.  [R. at 41].  Plaintiff vacuums, mops, and cleans the bathtubs.  [R. at 42].  Plaintiff has to rest periodically while doing a "chore."  [R. at 42]. Plaintiff is able to carry the laundry to the laundromat.  [R. at 43].

Plaintiff believes that she is no longer able to work.  [R. at 44].  After she fell, Plaintiff twisted her back.  [R. at 44].  Her back causes her constant pressure and pain.  [R. at 45]. According to Plaintiff, standing for eight hours puts tremendous pressure on her back and led to pain in her feet.  [R. at 46].  The pain would last for a few hours.  [R. at 47].

Plaintiff has received only chiropractic treatment for her back.  [R. at 49].  Since Plaintiff lost her job she has been unable to obtain treatment.  [R. at 49].

Plaintiff also testified that she has experienced problems with her left knee.  [R. at 51].  According to Plaintiff, her knee swells if she is on her feet for thirty minutes or longer.

[R. at 51].  Plaintiff has arthritis in her toes, elbows, and knees.  [R. at 52].  Plaintiff cannot lift anything heavier than 20 pounds.  [R. at 54].  Plaintiff can walk about one block.  [R. at 59].  Plaintiff can stand for about thirty minutes, and sit for about fifteen minutes.  [R. at 59].  Plaintiff believes the heaviest that she can lift is approximately 15 pounds.  [R. at 60].

Plaintiff testified that she believed she had gotten herself out of a very deep depression that had worsened the six months prior to the hearing.  [R. at 56].  Plaintiff has been unable to see anyone for her depression because her husband did not believe the depression was real.  [R. at 56].  Plaintiff believes that her depression affects her ability to concentrate.  [R. at 64].

Plaintiff has suffered from shortness of breath beginning approximately six months prior to the hearing.  [R. at 58].  Plaintiff has mentioned her shortness of breath to her doctor, and he suggested that she lose weight.  [R. at 63].  Plaintiff walks about one block to do her laundry.  Plaintiff believes that she would be unable to walk more than that.  [R. at 59].  Plaintiff believes she could sit for approximately 30 minutes.  [R. at 59].  Plaintiff can lift no more than 15 pounds.  [R. at 60].  Plaintiff does carry her laundry to the laundromat.  Plaintiff has no problem lifting overhead.  [R. at 64].

Plaintiff's husband is on social security disability, and Plaintiff takes care of him.  [R. at 59].  Plaintiff stated that she diets and exercises to the best of her ability.  [R. at 62].

In her disability report, Plaintiff noted that she was 5'2" tall and weighed 190 pounds.  [R. at 105].  Plaintiff noted that she suffered from disc deterioration and pain in her lower back, legs, and feet.  Plaintiff also indicated that arthritis affected her.  [R. at 106].

Plaintiff completed a pain questionnaire on July 21, 2002.  [R. at 123].  Plaintiff noted that she could no longer perform any work or job that required long periods of standing,

bending, lifting, walking or sitting because she was short of breath and had no energy.  [R. at 123].   Plaintiff noted that she could not walk long distances.  [R. at 123].   Plaintiff represented that she experienced constant aches and pressures primarily in her lower back but distributing also to the soles of her feet.  [R. at 123].   Plaintiff indicated that she experiences pain and pressure constantly. [R. at 123].  Plaintiff wrote that she had difficulty seeing a doctor because she had no insurance, but that when her pain became unbearable she visited her chiropractor.  [R. at 124].

During an average day, Plaintiff makes her bed.  Plaintiff also washes dishes, does chores, and fixes meals.  [R. at 125].  Plaintiff indicated that doing daily chores takes her longer because of her impairments.  [R. at 125].  Plaintiff noted that she does a little bit at a time, and then rests.  [R. at 127].  According to Plaintiff, she sleeps for approximately six to seven hours each night.  [R. at 125].  Plaintiff has to have pain relievers in order to sleep. [R. at 125].  Plaintiff shops for groceries once or twice each week.  [R. at 127].

Plaintiff's medications list dated June 17, 2003, indicates she took Alleve for pain. [R. at 141].

On October 10, 2003, the ALJ wrote to the vocational expert.  The ALJ indicated that his hypothetical question included an individual who could lift or carry 20 pounds infrequently and ten pounds frequently; occasionally stoop; needed responsible clean air; no frequent, prolonged, extreme or pressure bending or stooping; no active interaction with general public; and able to perform at least simple repetitive tasks with regular supervision present at the work location, no work alone.  [R. at 145].  The vocational expert answered that the hypothetical person could perform several jobs in the national economy.  [R. at 147].

On September 19, 2001, Plaintiff described nighttime leg and back pain. [R. at 154]. On December 11, 2001, Plaintiff saw a doctor complaining of back pain. [R. at 152]. Plaintiff noted that she suffered from low back pain. Plaintiff had an accident at work on December 5, 2001, which twisted her back. [R. at 152]. Plaintiff complained of pain radiating to her leg. X-rays of Plaintiff's lumbar spines indicated degenerative joint disease at L5-S1. [R. at 153].

Plaintiff had MRI tests which were interpreted as indicating an L4 L5 disc abnormality and early stenosis and posterior facet disease in addition to an L5 S1 disc abnormality. [R. at 207].

Dr. Hastings, D.O., examined Plaintiff and wrote a report on January 17, 2002. [R. at 209]. He noted that Plaintiff was injured while performing warehouse work when she lost balance while standing on a pallet and fell and twisted before being caught by two employees prior to hitting the ground. [R. at 209]. Plaintiff complained of back pain which is worsened by bending, stooping, lifting, or twisting. Plaintiff complained of aching in her lower extremities and discomfort over her right ankle. [R. at 210]. Plaintiff was subsequently examined by Dr. Hastings in December 4, 2002. [R. at 234]. He concluded that Plaintiff had a 16% impairment to her back and a 25% impairment to the whole person. [R. at 237].

Plaintiff was evaluated by Central States Orthopedic on June 17, 2002. [R. at 215]. Plaintiff complained of low back pain with occasional radiation to her posterior thighs. [R. at 216]. Plaintiff described her pain as a constant 4 or 5 on a scale of 0 to 10. [R. at 216]. Plaintiff walked with a limp.

A Physical Residual Functional Capacity Assessment was completed by Thurma Fiegel, M.D., on August 30, 2000.  [R. at 220].  Plaintiff was reported as being occasionally able to lift up to 20 pounds, frequently able to lift 10 pounds, stand or walk six hours in an eight hour day, sit with normal breaks for six hours in an eight hour day, or push and pull an unlimited amount.  [R. at 221].

Plaintiff was examined by Dennis Rawlings, Ph.D., on August 8, 2003.  [R. at 240]. Plaintiff walked with a slight limp.  [R. at 240].   Plaintiff was molested by her brother and molested and beaten by her first husband.  [R. at 241].  Plaintiff's "depression scale was above 85 T indicating she is experiencing depressive symptomatology severe enough to warrant treatment.  She also likely has an anxiety disorder which at this time is less severe." [R. at 241].  He indicated Plaintiff's GAF was 50/55.

Dr. Rawlings completed a Mental Medical Source Statement.  "No significant limitation" is defined on the form as "only minimal affect on ability to perform basic work functions."  [R. at 243].  The definition for "moderate" on the form is "affects but does not preclude ability to perform basic work functions." [R. at 243]. "Marked" limitation is defined as "seriously affects ability to perform basic work functions."  [R. at 243].  Dr. Rawlings indicated that Plaintiff's ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, ability to perform activities within a schedule, ability to maintain regular attendance, and ability to sustain ordinary work routine without special supervision, and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms were all moderately limited. [R. at 244].  Plaintiff's ability to interact appropriately

with the general public and ability to respond appropriately to changes in the work setting

were noted as markedly limited.  [R. at 244-45].

## II. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social

security claims.  *See* 20 C.F.R. § 404.1520.  Disability under the Social Security Act is

defined as the

> inability to engage in any substantial gainful activity by reason
> of any medically determinable physical or mental impairment
> . . . .

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work in the
> national economy. . . .

42 U.S.C. § 423(d)(2)(A).[3/]

The Commissioner's disability determinations are reviewed to determine (1) if the

correct legal principles have been followed, and (2) if the decision is supported by

---

[3/]   Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510 and 404.1572).  Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. § 1521.  If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled.  If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work.  A claimant is not disabled if the claimant can perform his past work.  If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy.  If a claimant has the RFC to perform an alternate work activity, disability benefits are denied.  *See* Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence.  *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th

Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported

by substantial evidence, does not examine the issues *de novo*.  *Sisco v. United States*

*Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will not

reweigh the evidence or substitute its judgment for that of the Commissioner.  *Qualls v.*

*Apfel*, 206 F.3d 1368 (10th Cir. 2000); *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.

1994).  The Court will, however, meticulously examine the entire record to determine if the

Commissioner's determination is rational.  *Williams*, 844 F.2d at 750; *Holloway v. Heckler*,

607 F. Supp. 71, 72 (D. Kan. 1985).

"The finding of the Secretary[4] as to any fact, if supported by substantial evidence,

shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is that amount and type

of evidence that a reasonable mind will accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of

traditional burdens of proof, substantial evidence is more than a scintilla, but less than a

preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed

by other evidence in the record.  *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal

standards.  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The

---

[4]  Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### III.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that Plaintiff could perform light work.  Based on the answer by a vocational expert to a written interrogatory, the ALJ concluded Plaintiff was not disabled.

### IV.  REVIEW

Plaintiff asserts that the ALJ did not properly consider the opinion and limitations noted by Dr. Rawlings in his examination of Plaintiff.  Plaintiff asserts that the ALJ erred by not actively discussing and discounting the opinion and by not presenting the resulting limitations to the vocational expert.

Dr. Rawlings concluded that Plaintiff suffered from depression.  In addition, Dr. Rawlings concluded that Plaintiff's ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, ability to perform activities within a schedule, ability to maintain regular attendance, and ability to sustain ordinary work routine without special supervision, and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms were all moderately limited.  [R. at 244].  Plaintiff's ability to interact appropriately with the general public and ability to respond appropriately to changes in the work setting were noted as markedly limited.  [R. at 244-45].  The ALJ did not discuss Dr. Rawlings' report, and the ALJ's hypothetical to the vocational expert included no limitations for the restrictions Dr. Rawlings indicates are "moderate."

The ALJ's decision does note the psychological examination by Dr. Rawlings, and the findings by Dr. Rawlings that Plaintiff had dysthymic disorder, anxiety disorder, avoidant

personality disorder, and that Plaintiff was depressed. [R. at 15].  The ALJ does not explain what weight he gives to Dr. Rawlings findings, or how the findings should be considered. The ALJ states only that "the undersigned has also reviewed the consultative psychological examiner's report in which he opined that the claimant would have some nonexertional limitations."  [R. at 16].

The only "psychological" limitations noted in Plaintiff's RFC by the ALJ are that Plaintiff is able to perform "at least" simple repetitive tasks with regular supervision, should not work alone, should have no active interaction with the general public, and little change in her work setting.  [R. at 16].

The form completed by Dr. Rawlings defines "no significant limitation" as "only minimal affect on ability to perform basic work functions."  [R. at 243].  The definition for "moderate" on the form is "affects but does not preclude ability to perform basic work functions." [R. at 243].  "Marked" limitation is defined as "seriously affects ability to perform basic work functions."  [R. at 243].  The Court concludes that the form is not a model of clarity.  A "moderate" limitation "affects" but does not preclude the ability to perform basic work.  Therefore, presumably Plaintiff would be affected in her ability to work but not precluded.  However, the restriction upon the ability to work must be greater than "minimal" because the form defines "no significant limitation" as a "minimal affect" on the ability to perform work.  Therefore, Dr. Rawlings' report indicates that Plaintiff's ability to perform certain activities is more than minimally affected but not precluded.  However, the ALJ never discusses the weight given to Dr. Rawlings' findings, or whether such findings can be discounted.  Furthermore, the ALJ included in his RFC only those limitations found by Dr. Rawlings to "seriously affect" Plaintiff's ability to perform work functions.  Therefore, the

vocational expert was never presented the limitations that Plaintiff's ability to perform certain work functions may be more than minimally affected but not entirely precluded with regard to numerous factors.

Because the ALJ never addressed whether or not he accepted Dr. Rawlings conclusions with regard to Plaintiff's moderate limitations and never presented those moderate limitations to the vocational expert, the decision of the ALJ is not supported by substantial evidence.  On remand, the ALJ should specifically address Dr. Rawlings' report and present all limitations to the vocational expert.

Dated this 15th day of March 2006.

Sam A. Joyner
United States Magistrate Judge